UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                              :
ELLEN SIMPSON,                :
                              :          Civil Action No.
            Plaintiff,        :          04-4537 (NLH)
                              :
      v.                      :
                              :
CITY OF ATLANTIC CITY, POLICE :              **OPINION**
OFFICER DARRYL DABNEY, AND    :
JOHN DOES 1-10,               :
                              :
            Defendants.       :
_____

      _____

**APPEARANCES:**

George N. Polis, Esq.
5309 Atlantic Avenue
Ventnor, NJ 08406
*Attorney for Plaintiff Ellen Simpson*

Donna Lee Vitale, Esq.
Jasinski and Williams
The Old Guarantee Trust Bldg.
1125 Atlantic Avenue, Suite 518
Atlantic City, NJ 08401
*Attorney for Defendant City of Atlantic City*

Michael J. Mackler, Esq.
Goldberg, Mackler, Sayegh, Mintz, Pfeffer,
   Bonchi & Gill
1030 Atlantic Avenue
Atlantic City, NJ 08401
*Attorneys for Defendant Darryl Dabney*

**HILLMAN, District Judge**

## I.  INTRODUCTION

      This action is brought pursuant to 42 U.S.C. § 1983,

against the City of Atlantic City ("Defendant Atlantic City") and

Officer Darryl Dabney of the Atlantic City Police Department
(collectively "Defendants").  Plaintiff claims that Defendant
Dabney used excessive and unreasonable force and arrested her
without probable cause.  Plaintiff claims that Defendant Atlantic
City is vicariously liable because it failed to properly train
its officers and conspired to deprive Plaintiff of her Fourth and
Fourteenth Amendment rights.  Plaintiff also brought various
state law claims.[1]


## II.  PROCEDURAL HISTORY

This action was removed to federal court on September 20,
2004, pursuant to 28 U.S.C. § 1441 et seq. (permitting a
defendant to remove state actions to district court).
Jurisdiction is proper under 28 U.S.C. § 1331 (establishing
jurisdiction over actions arising under federal law).  Defendant
Atlantic City filed a motion for summary judgment on August 3,
2006, and Defendant Darryl Dabney filed a motion for summary

---

[1]  In her complaint, it appears that Plaintiff is claiming a
federal constitutional violation of assault and battery.  We
interpret this as a claim under state law.  "A person may be
liable for battery under New Jersey law, if that person 'acts
intending to cause a harmful or offensive contact ··· or an
imminent apprehension of such contact' and a 'harmful' or
'offensive' contact 'directly or indirectly results.'" Adegbuji
v. Middlesex County, No. 03CV-1757, 2006 WL 2806289, at *12
(Sept. 28, 2006 D.N.J.); see Mantz v. Chain, 239 F. Supp.2d 486,
507-08 (D.N.J. 2002).  Where appropriate, facts regarding Officer
Dabney's assault and battery upon Plaintiff will be viewed in
support of Plaintiff's excessive force claim in violation of her
Fourth Amendment rights.

judgment on August 18, 2006.   The plaintiff failed to file a
timely opposition to the motions or request an extension to file.
On September 13, 2006, and September 18, 2006, Defendants filed
letters opposing the filing of an untimely response by Plaintiff
pursuant to Local Rule 7.1(d)(5).   On September 18, 2006,
Plaintiff filed a one page letter simply stating that Defendants'
motions should be dismissed because a disputed issue of fact
existed as to whether Officer Dabney used self-defense.   Although
Plaintiff did not request permission from the Court to file her
untimely response, we grant Plaintiff an extension to file her
letter response and, therefore, the letter response will be
considered by the Court.   The Defendants did not file replies to
Plaintiff's letter response.

On March 16, 2007, counsel for the parties appeared before
the Court and provided oral argument on the legal issues of
whether Officer Dabney's conduct was "objectively reasonable,"
and whether the Plaintiff presented any proof against Defendant
Atlantic City of failure to train its police officers.   We find
based upon the written briefs and subsequent argument provided by
counsel that Plaintiff's claims fail as a matter of law and grant
Defendants' motions for summary judgment.

### III.   BACKGROUND

The incident giving rise to this case occurred on the

3

evening of July 14, 2002, at approximately 7:00 p.m., in Atlantic City, New Jersey close to Plaintiff Ellen Simpson's residence. According to testimony provided by Simpson, Simpson witnessed an altercation between her niece, Nydia, and the daughter of her neighbor, Tanisha, earlier that evening.  The two teenage girls got into an argument after Nydia made the statement that Tanisha's son had fleas.  Simpson heard Tanisha yelling and using profanity so she went outside to end the argument between the girls and told Tanisha that she would "take care of the situation."  Tanisha returned to her home, although Simpson still heard her yelling from the porch.  Eventually Tanisha went inside her house.

Simpson then drove a friend to the liquor store and returned approximately ten minutes later.  When she arrived, she witnessed a large crowd, consisting of several teenaged boys, some of whom were running, one person in particular was running with a stick. She described the scene as "chaos."  It was Simpson's impression that the previous altercation between Nydia and Tanisha had escalated and that others became involved.  Certain male relatives of Simpson's were involved in altercations with other males on the street.  Simpson stated she yelled to get their attention to make them stop chasing each other and told certain males who lived on the street to go back to their respective homes.  Simpson observed one male whom she identified as the son

of a neighbor, Lisa Bishop, reaching under his shirt, and was
concerned he was reaching for a gun.  Simpson exchanged words
with Ms. Bishop and told her, "Lisa, get your son."  Ms. Simpson
also told Ms. Bishop to "get that girl" as Simpson was concerned
that the girl was trying to fight with her niece.

Simpson then noticed that several police cars had pulled up
and testified that she motioned for a police officer to come to
where she and Ms. Bishop were standing.  Simpson told the police
officer that it was Tanisha that started the whole thing, but Ms.
Bishop stated it was someone else.  Simpson testified that the
police officer yelled obscenities at them to which Simpson
responded, "don't talk to me like that," or "who are you talking
to like that."  Simpson then states she turned to leave and three
or four police officers jumped on her back, threw her up against
a window, banged her head against the window, pulled her hands
over her head and held her feet.

The officers' attention then turned toward Simpson's son who
was in a physical altercation with another police officer.  All
of the officers except one female officer left Simpson to assist
the other officer.  While being restrained by the one female
officer, Simpson states she was able to turn her head and observe
that the crowd had grown and it "looked like hundreds" of people
were present.  She states she saw seven or eight police officers
"beating up [her] son" by punching and kicking him while her son

5

was lying on his stomach on the ground.  Simpson then states that the female officer holding her let her go.  She ran to her son yelling at the top of her lungs at the officers to stop kicking and hitting her son.  She states she was standing still when she saw Officer Dabney kick her son, turn, take two steps, lunge and punch her in the face.  She fell to the ground and was knocked out briefly.  Simpson testified that a female officer then told her she was under arrest, handcuffed her, threw her in backwards in the back of a patrol car, and began kicking her.  She then testified that either Officer Dabney or an unknown female officer pulled her hair braids from the other side of the car following which the officers shut the doors and she was taken to the police station.

Testimony provided by Officer Dabney, and not contradicted by Plaintiff, provides that he arrived on the scene and noticed Officer Fernald (a female police officer) attempting to take Simpson into custody.  He also noticed that Officer Timek was injured and observed blood pouring down his head.  Office Timek was struggling with Simpson's son who was resisting arrest. Dabney went over to Officer Timek and was assisting in the arrest when the son attempted to grab hold of Dabney's gun belt.  Dabney broke free then heard Officer Fernald yell "Daryl watch out."  He turned and saw Simpson, about two to three feet away from him, running toward him.  He hit Simpson in the face with his left

hand and Simpson fell to the ground.[2]  Simpson was taken
immediately into custody by other officers on the scene.  Dabney
returned to assisting in the arrest of Simpson's son.  After
Simpson's son was handcuffed and under control, Dabney saw
Officer Fernald attempting to put Simpson in the back of the
patrol car.  Simpson was sitting in the back seat with her back
facing the opposite door and her feet outside of the car.  Dabney
went to the opposite side of the car, opened up the back door,
climbed in the car, grabbed Simpson by the arm and pulled her
into the car so that Officer Fernald could shut the door.  Dabney
testified that from the time he arrived on the scene until
Simpson was taken into custody lasted no more than two minutes.

### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied
that "the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.
P. 56(c).  An issue is "genuine" if it is supported by evidence
such that a reasonable jury could return a verdict in the
nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477

---

[2]  Officer Dabney testified that he is right-handed.

U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  We address the federal claims against Officer Dabney and Atlantic City separately below.

8

### B.  Federal Claims

Simpson has alleged that Officer Dabney is liable under Section 1983 for false arrest and excessive force in violation of her Fourth and Fourteenth Amendment rights, and that Defendant Atlantic City is liable under Section 1983 for failure to adequately train its officers.  To state a claim under 42 U.S.C. § 1983, the plaintiff must show that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States.  See, e.g., Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005)(citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.1995); citing Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

### 1.  False Arrest and Excessive Force

Officer Dabney does not dispute that he was acting under color of state law.  He maintains that he did not violate Simpon's constitutional rights and, therefore, is entitled to qualified immunity.  Whether qualified immunity exists is an issue that must be resolved as early as possible in the litigation.  Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (stating that because qualified immunity is "an immunity from suit rather than a mere defense to liability,... we repeatedly

have stressed the importance of resolving immunity questions at
the earliest possible stage in litigation."). The standard
promulgated by the Third Circuit in considering whether qualified
immunity applies to law enforcement officers on a motion for
summary judgment is as follows:

> Qualified immunity protects law enforcement
> officers from being tried for actions taken in the
> course of their duties. If the immunity applies,
> it entitles the officer to be free of the 'burdens
> of litigation.' But the immunity is forfeited if
> an officer's conduct violates 'clearly established
> statutory or constitutional rights of which a
> reasonable person would have known.' To determine
> ... whether the officers have lost their immunity,
> we must engage in a two step analysis. First, we
> must decide 'whether a constitutional right would
> have been violated on the facts alleged.' Second,
> if we believe that a constitutional violation did
> occur, we must consider whether the right was
> 'clearly established.' The question is 'whether
> it would be clear to a reasonable officer that his
> conduct was unlawful in the situation he
> confronted.' This is an objective inquiry, to be
> decided by the court as a matter of law.

Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004)(citations
omitted).

    Of the various claims listed in Plaintiff's complaint, those
potentially violative of Plaintiff's constitutional rights are
her claims that she was falsely arrested and detained without
probable cause, and that Officer Dabney used excessive force.
The only contacts that Officer Dabney had with Simpson during the
incident was when he punched her in the face and when he pulled

her across the back seat of the patrol car.  Under the facts in this case, both of those actions are more properly analyzed under the excessive force claim and not under a false arrest claim, particularly because Office Dabney did not place Plaintiff under arrest.[3]

Use of excessive force by a law enforcement officer is considered a "seizure" under the Fourth Amendment, which prohibits such unlawful action. Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395(1989); Tennessee v. Garner, 471 U.S. 1, 7(1985)). In determining whether excessive force was used during an arrest, an "objective reasonableness" test is applied. Sharrar v. Felsing, 128 F.3d 810, 820-21 (3d Cir. 1997)(citing Graham v. Connor, 490 U.S. 386, 396 (1989)).  The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

---

[3]  Officer Fernald was the Officer that physically placed Plaintiff under arrest.  Even if Officer Dabney's action of pulling Plaintiff across the back seat of the patrol car is considered assisting an arrest, we find it was not in violation of the Fourth Amendment as probable cause existed to arrest Plaintiff for violation of N.J.S.A. 2C:12-1(b)(5)(a) (Aggravated Assault - assault upon law enforcement officer acting in the performance of his duties while in uniform) and N.J.S.A. 2C:29-2(a) (Resisting arrest; eluding officer).

(relying on Graham, 490 U.S. at 396; Groman v. Township of
Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)).  In evaluating the
proper test for objective reasonableness, the Supreme Court has
provided that "not every push or shove, even if it may later seem
unnecessary in the peace of a judge's chambers,... violates the
Fourth Amendment."  Graham v. Connor, 490 U.S. 386, 396
(1989)(citation omitted).  Rather, "[t]he calculus of
reasonableness must embody allowance for the fact that police
officers are often forced to make split-second judgments-in
circumstances that are tense, uncertain, and rapidly evolving-
about the amount of force that is necessary in a particular
situation." Id.

     Applying the "objectively reasonable" test, the Court of
Appeals for the District of Columbia found that a police
officer's use of force was not so excessive that "no reasonable
officer could have believed in the lawfulness of his actions."
Wardlaw v. Pickett, 1 F.3d 1297, 1303 (1993), cert denied, 512
U.S. 1204 (1994), rehearing denied, 512 U.S. 1270 (1994).  In
Wardlaw, the plaintiff witnessed his friend, Heid, being escorted
from a courtroom by deputies. Id. at 1300.  Heid went limp as the
deputies attempted to bring him down the stairwell to eject him
from the courthouse. Id.  Wardlaw, the plaintiff, entered the
stairwell and testified he saw the deputy holding Heid like a
"sack of potatoes" and then saw the deputy punch and kick his

                                12

friend.  Id.  Wardlaw then "rushed down the stairs toward [the
deputy] shouting out 'Don't hurt him please.  He is totally
nonviolent.'"  Id.  The deputy "turned and punched the approaching
Wardlaw once in the jaw and two or three times in the chest." Id.
The Court found that the deputy could have reasonably anticipated
a confrontation, coupled with his being in a vulnerable position
in the stairwell escorting an uncooperative individual with the
plaintiff rushing towards him.  Id. at 1303-04.  The Court also
took note that the plaintiff was shouting as he approached the
deputies, reasonably raising a fear that he was about to attack.
Id.

     In Winters v. Adams, 254 F.3d 758, (2001), the Eighth
Circuit found that a police officer did not use excessive force
when he punched a visibly intoxicated person in the eye while
trying to remove the individual, who was "thrashing around" and
trying to fight with the officers, from a vehicle.  The Eighth
Circuit found the officer's conduct objectively reasonable based
on the finding that the individual was kicking and flailing at
the officers and struck the officer before being struck himself.
Id. at 765.

     Likewise, we find that Officer Dabney's conduct towards
Simpson was objectively reasonable.  In this case, Officer Dabney
was operating against a backdrop of a street fight described by
Simpson as "chaos" and what seemed like "hundreds" of people

13

running around.  Upon arriving at the scene, Office Dabney witnessed several police officers restraining Simpson up against the wall.  He observed Officer Timek, who was bleeding, struggling to arrest Simpson's son.  As he was attempting to assist in the arrest, the son reached for Officer Dabney's gun belt.  Officer Dabney then heard Officer Fernald yell "Darryl watch out!" and saw Simpson running towards him yelling at the top of her lungs to stop hitting her son.  Even accepting Simpson's version that the female officer restraining her let her go voluntarily, and that she was only running toward Officer Dabney in order to tell them to stop hurting her son, it is reasonable for Officer Dabney to have concluded that Simpson broke free of Officer Fernald after seeing her son on the ground and was running toward Officer Dabney to strike him.

Under these circumstances, Officer Dabney's behavior was reasonable as a matter of law.  He used as much force as was necessary to stop Simpson and had to make this choice in a matter of seconds while trying to quell a riot, trying to assist in a difficult arrest, and trying to make sure his weapon was secure. Officer Dabney's uncontradicted testimony that he hit Simpson with his left hand, even though he is right-handed, supports the finding that Dabney had to make a split second decision and struck with his free hand rather than his dominant hand.  He delivered one single blow that was effective in subduing Simpson.

14

When he punched Simpson, Office Dabney had reason to suspect that Simpson posed an immediate threat to the safety of the officers and others, and that she was actively resisting arrest or attempting to evade arrest.

Also, the seizure of Simpson by Officer Dabney when he reached in from the opposite side of the patrol car in order to pull Simpson across the seat so that the back doors could be closed and secured was reasonable under these circumstances.  The officers were still attempting to calm a street fight that had erupted into chaos.  Simpson testified that she was placed in the back seat of the patrol car, the car door was open and she was being kicked by a female officer.  Even taking Simpson's testimony as true, Officer Dabney's conduct is reasonable as a matter of law.  Officer Dabney facilitated in getting Simpson securely in the back seat so that door could be closed and the kicking stopped.

Plaintiff's one page letter response simply states that an issue of fact remains over whether Officer Dabney acted in self-defense when he punched Simpson in the face knocking her to the ground.  We disagree.  We find that reasonable minds could not differ in finding that Officer Dabney's conduct was objectively reasonable under the circumstances.  As such, Officer Dabney did not violate Plaintiff's Fourth and Fourteenth Amendment rights.  Accordingly, if there is no constitutional violation, then the

15

inquiry for qualified immunity ends. <u>Saucier</u>, 533 U.S. at 201. (if "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Thus, Defendant Dabney's motion for summary judgment is granted, and the claims brought pursuant to Section 1983 against him are dismissed with prejudice.

**2.    Failure to Train**

Plaintiff alleges in her complaint that Defendant Atlantic City is vicariously liable for the actions of the individual defendants for failing to properly train its officers or for exhibiting a deliberate indifference to the officers' execution of their duties.  Plaintiff claims that Defendant Atlantic City deprived her of her civil rights without due process of law in violation of the Fourth and Fourteenth Amendments under the U.S. Constitution.

Liability under § 1983 may be imposed on municipalities where acts of the government employee are deemed to be the result of a policy or custom of the municipality for whom the employee works.  See <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658, 691 (1978); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003).  In cases where the plaintiff alleges that the municipality failed to properly train the employee, the municipality can be liable under Section

16

1983 if the failure to train constitutes "deliberate indifference" to the rights of persons with whom the police come into contact; mere negligence to adequately train is not enough. Malignaggi v. County of Gloucester, 855 F. Supp 74, 77(D.N.J. 1994).  "In general, where a plaintiff seeks to establish liability based on a supervisor's (or municipality's) failure to train or supervise adequately, the plaintiff must show that a need for more or different training or supervision is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train or supervise can fairly be said to represent official policy." Calhoun v. Vicari, No. 05-4167, 2005 WL 2372870, at *3 (D.N.J. Sept. 26, 2005)(relying on City of Canton v. Harris, 489 U.S. 378, 388-92 (1989)).  In order to bring a claim of failure to train, a plaintiff must: "(1) identify the deficiency; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency reflected deliberate indifference on the part of the municipality." Malignaggi, 855 F. at 77 (citing Canton, 489 U.S. at 391; Colburn v. Upper Darby Township, 946 F.2d 1017 (3d Cir. 1991)).

Defendant Atlantic City argues in its motion for summary judgment that Plaintiff has failed to satisfy the first two prongs of the above test, and cannot satisfy the third prong. It states that Plaintiff has neither "identified any criticism of

17

the training" nor produced an expert report.  It also points to

Plaintiff's responses to written discovery in which she failed to

identify any evidence upon which she relies for her allegation

that Defendant Atlantic City failed to adequately train its

officers.  Moreover, Defendants' expert, Bryon Marshall, provides

that Officer Dabney used "the appropriate level of force to

protect himself when there was a threat of unlawful force or

immediate need to use force" according to the Attorney General's

Guidelines on Use of Force, as well as the County's policies and

City's policies on the use of force.

Simpson provided no response to Defendant Atlantic City's

motion for summary judgment.[4]  Since it has been determined that

Officer Dabney did not violate Plaintiff's constitutional rights

(and Plaintiff has not alleged that any other police officers

---

[4] During oral argument on March 16, 2007, in response to
Defendant Atlantic City's argument requesting summary judgment on
plaintiff's failure to train claim, Plaintiff's counsel argued
that he was not provided with Defendant Atlantic City's training
manuals or other pertinent documents relied upon by Defendant's
expert.  As noted during the hearing, disputes concerning
document production are more appropriately handled in the
discovery phase, and if need be, through a motion to compel.
Plaintiff's failure to respond to a motion for summary judgment
cannot be excused based upon her prior failure to compel
documents identified over six months ago.  In addition,
Plaintiff's counsel's submitted a "supplemental post-argument
submission" by letter dated March 16, 2007, raising the same
document production issue.  Plaintiff's supplemental post-
argument submission will not be considered by the Court.
Plaintiff did not obtain permission to submit it, it raises no
issue of material fact, and briefing on the motions concluded
months ago.

violated her constitutional rights), we find that Plaintiff cannot put forth evidence to support a failure to train claim. Thus, Defendant Atlantic City's uncontested motion for summary judgment is granted and the claims brought pursuant to Section 1983 against Defendant Atlantic City are dismissed with prejudice.

### C.  State Law Claims

Pursuant to 28 U.S.C. § 1367, a district court can decline to exercise supplemental jurisdiction over state law claims if it has dismissed all of the federal claims.  Bonengerger v. Plymouth Twp., 132 F.3d 20, 23 n.1 (3d Cir. 1997).  We have dismissed all of Plaintiff's federal claims with prejudice and, therefore, remand the remaining state law claims to the state court of original jurisdiction. See Malignaggi, 855 F. Supp. at 81 (citing Carnegie-Mellon University v. Cohill, 484 U.S. 343, 351-52 (1988)("holding that when the underlying federal claim is dismissed, district court has discretion to remand remaining pendant claims of previously-removed case to state court.").

### IV.  CONCLUSION

Defendant Dabney's and Defendant Atlantic City's motions for summary judgment are granted and Plaintiff's federal claims are dismissed with prejudice.  Plaintiff's state law claims are

19

remanded to state court of original jurisdiction.

An Order consistent with this Opinion will be entered.


                                        s/Noel L. Hillman
_____        NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey

20